IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE D. HARBERT,<br>ANNE KRAJEWSKI-HARBERT,<br><br>        Plaintiff,<br><br>  v.<br><br>ROBERT PRIEBE, MARK RUPPENTHAL,<br>ED ZELTZER, TOWN OF MORAGA,<br><br>        Defendant.<br>_____/ | No. C 06 1145 WHA (EDL)<br><br>**ORDER DENYING PLAINTIFFS'**<br>**MOTION TO COMPEL**<br>**COMPLIANCE/OBEDIENCE TO**<br>**SUBPOENAS** |

I.    Background

    Plaintiff Lee Harbert is the alleged driver in a January 11, 2005 hit-and-run death of a woman in Moraga. The Contra Costa Times published articles about the incident on January 29 and February 11, 2005 which referred to past driving under the influence by Harbert and his wife, co-plaintiff Anne Krajewski Harbert. Lee Harbert was charged on March 8, 2006 with a felony complaint for leaving the scene of an accident with a fatality or permanent serious injury.

    Plaintiffs filed this action on February 16, 2006, against three Moraga police officers and the Town of Moraga, alleging federal and state law claims based on allegations that Defendants divulged Plaintiffs' DUI history and other private information to the news media. See, e.g., Compl., Second, Third and Seventh Claims for Relief. On August 25 and September 25, 2006, Plaintiffs served nonparty Contra Costa Times with subpoenas for "documents, investigative notes and

1  electronic files" concerning the news articles. Franck Decl., Exs. A, B. The <u>Times</u> served an
2 objection to the September 25 subpoena. On October 23, 2006, Plaintiffs filed the present Motion to
3 Compel Compliance/Obedience to Subpoenas.

II.   Analysis

    A.   State Law Immunity

The <u>Times</u> contends that the Court should apply state privilege law here pursuant to Federal Rule of Evidence 501, because six of the ten claims assert state law claims for relief. The <u>Times</u> argues that the California shield law, Evidence Code section 1070, protects against discovery of unpublished information from non-party journalists. That statute provides that "[a] publisher, editor, reporter or other person connected with or employed upon a newspaper . . . cannot be adjudged in contempt by a judicial [or other subpoena-issuing] body." Cal. Code Evid. § 1070(a). However, as the court in <u>Dalitz v. Penthouse Intern., Ltd.</u> explained, "[t]he California 'shield law' (Cal. Const., art. I, § 2; Evid. Code, § 1070) provides an immunity from being adjudged in contempt. It does not create an absolute privilege for newspeople. Rather, it additionally provides a conditional or qualified privilege." 168 Cal. App. 3d 468, 482 (2 Dist. 1985). The Assembly Committee's comments state that this provision "provides an immunity from being adjudged in contempt; it does not create a privilege." Cal. Code Evid. § 1070(a), Assembly Comm. on Judiciary cmt. The difference between this immunity from the sanction of contempt and the privilege that the <u>Times</u> wishes to invoke is that "[a] privilege would prohibit all sanctions, not just contempt." <u>New York Times Co. v. Superior Court</u>, 51 Cal. 3d 453, 462-463 (1990).

The shield law leaves intact sanctions other than contempt that are available. <u>Id</u>. It is true that as a practical matter, "[s]ince contempt is generally the only effective remedy against a nonparty witness, the California [shield laws] grant such witnesses <u>virtually absolute protection</u> against compelled disclosure." <u>Id</u>. at 461, quoting <u>Mitchell v. Superior Court,</u> 37 Cal.3d 268, 274 (1984) (emphasis added in original). However, the discovering party may pursue monetary sanctions against a nonparty journalist pursuant to section 1992 of the Code of Civil Procedure, which provides as follows: "A person failing to appear pursuant to a subpoena or a court order also forfeits to the party aggrieved the sum of five hundred dollars ($500), and all damages that he or she may

2

1  sustain by the failure of the person to appear pursuant to the subpoena or court order, which
2  forfeiture and damages may be recovered in a civil action." Cal. Code Civ. Proc. § 1992; New York
3  Times, 51 Cal. 3d at 464.

4      Thus, if state law were solely applicable here, the California shield law would not necessarily
5  protect the Times completely against disclosing the subpoenaed documents. However, in light of the
6  fact that their case asserts federal claims, the Court applies federal privilege law pursuant to Rule
7  501. See Agster v. Maricopa Co., 422 F.3d 836, 839 (9th Cir. 2005) ("Where there are federal
8  question claims and pendent state law claims present, the federal law of privilege applies."); Fed. R.
9  Evid. 501, Advisory Comm. Notes.

10      B.    Federal privilege law

11      Schoen v. Schoen, 48 F.3d 412 (9th Cir. 1995) ("Schoen II") sets forth the terms of the
12  qualified privilege for journalists under federal common law:

> where information sought is not confidential, a civil litigant is entitled to requested discovery notwithstanding a valid assertion of the journalist's privilege by a nonparty only upon a showing that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) non-cumulative; and (3) clearly relevant to an important issue in the case. We note that there must be a showing of actual relevance; a showing of potential relevance will not suffice.

17  Schoen II, 48 F.3d at 416. Thus, Schoen II imposes high hurdles against compelling discovery from
18  third party journalists. Plaintiffs failed to surmount these hurdles.

19      Plaintiffs contend that they exhausted reasonable alternatives simply by propounding
20  interrogatories asking whether Defendants provided information to the press, to which the response
21  was "No." Mot. at 8. Plaintiffs speculate that these interrogatory responses are false, and that
22  instead Defendants provided DMV records to the journalists. Id. at 9. Plaintiffs rely on their expert
23  witness' conjecture that a "news journalist cannot obtain [DMV records], and would have to obtain
24  it from a law enforcement source. . . . We don't know this for sure, and are trying to figure it out by
25  the requested discovery." Clark Decl., ¶¶ 5, 6 (emphasis added).

26      Plaintiffs have not taken any depositions or indicated that they have made other efforts to
27  obtain information, and instead rely only on the purported inadequacy of the interrogatory response.
28  As the Ninth Circuit held, merely asking interrogatories does not exhaust reasonable alternatives:

3

> Written interrogatories are rarely, if ever, an adequate substitute for a deposition when the goal is discovery of a witness' recollection of conversations. . . . Only by examining a witness live can a lawyer use the skills of his trade to plumb the depths of a witness' recollection, using to advantage not only what a witness may have admitted in answering interrogatories, but also any new tidbits that usually come out in the course of answering carefully framed and pin-pointed deposition questions. Written interrogatories are not designed for that purpose; pointed questions at deposition are the only effective way to discover facts bottled up in a witness' recollection.

Schoen v. Schoen, 5 F.3d 1289, 1297 (9th Cir. 1993) ("Schoen I").

Furthermore, Plaintiffs have not shown that the requested material is "clearly relevant to an important issue in the case." Schoen II, 48 F.3d at 416. Plaintiffs' prior DUI convictions are public records freely available from the Contra Costa County Superior Court Clerk's Office. Opp. at 7-8; Lau Decl., Ex. A, B (court records). Plaintiffs do not refute that these court records are available to the public.

Plaintiffs argue nonetheless that the offenses should not have been disclosed because they were expunged. Plaintiffs cite People v. Field, 31 Cal. App. 4th 1778, 1786 (1995), in support of their contention that the purpose of expungement, pursuant to Penal Code section 1203.4, "is to cleanse a record and make it as though it never occurred in the first place." Reply at 3-4. Their argument is unavailing. "Expungement under section 1203.4, of course, does not obliterate a conviction for all purposes. . . . [R]ecords of a conviction expunged under section 1203.4 are accessible to the public." Field, 31 Cal. App. 4th at 1787 (emphasis added).

Moreover, the fact that Plaintiffs' prior convictions are public records undermines their privacy claims. Accordingly, Plaintiffs' mere belief that Defendants released Plaintiffs' street address and other information to the media is not sufficient to show that the journalists' records are "clearly relevant" to an important issue in the case. See Reply at 2.

III.   Evidentiary Objections

The Times has objected to portions of the Declaration of Roger Clark and Declaration of Herman Franck. The objections appear to be well-taken, and Plaintiffs' failure to respond to them would justify sustaining the objections. The Court's ruling, however, is the same even if the objections were overruled.

//

4

IV. Conclusion

Plaintiff's Motion to Compel Compliance with Records Subpoena is DENIED.

This order disposes of Docket No. 20.

IT IS SO ORDERED.

Dated: December 18, 2006

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge